Alexander E. Baker, Jr. and Mary A. Baker v. Commissioner.
Baker v. Commissioner
Docket No. 2677-70 SC.
United States Tax Court
T.C. Memo 1971-278; 1971 Tax Ct. Memo LEXIS 53; 30 T.C.M. (CCH) 1192; T.C.M. (RIA) 71278; November 1, 1971, Filed. Alexander E. Baker, Jr., pro se, 4351 Halupa St., Honolulu, Hawaii, for the petitioners. Edward G. Lavery, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioner's income taxes of $100.89 and $261.50 for the calendar years 1966 and 1967, respectively. The issue presented for our decision is whether petitioners may deduct certain eduactional 1193 expenses as ordinary and necessary business expenses under section 162. [1]
*54 Findings of Fact Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Alexander E. Baker, Jr., and Mary A. Baker, are husband and wife and resided in Honolulu, Hawaii, at the time of the filing of their petition herein. Petitioners filed joint Federal income tax returns on the cash basis for the calendar years 1966 and 1967. Petitioner Alexander E. Baker, Jr. (hereinafter referred to as petitioner) enlisted for active duty with the United States Air Force in October 1952, at the age of 20. He was commissioned as a second lieutenant in 1954. In 1959 he was promoted to captain and in 1966 he was selected for promotion to major, which promotion became effective on January 20, 1967. On June 1, 1971, petitioner was promoted to lieutenant colonel. During 1966 and 1967, the years herein issue, petitioner was stationed as a flight operations officer in the Military Airlift Command at McChord Air Force Base near Tacoma, Washington. In this capacity, he organized air crews, selected the type of aircraft to be used in particular missions, and assisted in arranging the movement *55 of airplanes and cargo in conjunction with scheduled flights. He managed such valuable assets as aircraft and related equipment and was also in charge of deciding whether, in view of climatic conditions, particular missions should be sent forth. In 1966 and 1967 many of the missions he arranged involved moving personnel and materiel from the west coast to Southeast Asia. As a part of his job petitioner had to maintain his proficiency as an aircraft commander. Due to a shortage of pilots he had to fly approximately 100 hours every quarter and himself flew on missions to southeast Asia. A flight operations officer is not required to have a college degree. In September 1970, petitioner became a wing operations officer which constitutes a higher level staff position than a flight operations officer. At the time of trial he was a wing operations officer stationed at Richards-Gebaur Air Force Base near Kansas City, Missouri, and was in charge of 64 people. As a wing operations officer petitioner's responsibilities with respect to managerial duties increased. As a flight operations officer petitioner's duties had been confined solely to control of military airlift missions back and forth *56 across the Pacific Ocean. In his present position, however, petitioner is responsible for general military training, a small arms range, photographic and film libraries, a disaster control center, and a life support facility as well as the airport and the aircraft assigned to his base. Although it has been stipulated that there never has been any Air Force regulation requiring that commissioned officers have a college degree in order to remain in service, the Air Force encourages its officers to further their education. An officer working towards a degree is expected to follow certain guidelines in pursuing his degree program. The officer files his degree program with an education officer who has to approve the courses intended to be pursued. Generally speaking, as long as an officer can show that an educational program will lead to a degree, the program will satisfy the education officer. Between the time of his enlistment (1952) and the first year in issue (1966) petitioner attended various colleges at night. By 1966 he had accumulated 36 semester hours of credit for his bachelor's degree. He did most of the work for his degree in 1966 and 1967. From January 31, 1966, until *57 January 25, 1967, petitioner attended evening courses for approximately four nights per week at the University of Puget Sound (hereinafter referred to as the University) in Tacoma, Washington. While there he enrolled in the following courses: Winter Term
(Jan. 31, 1966, to June 3, 1966)
Semester
Course
Hours
Principles of management
3
Business law
3
Business law
3
*13Statistics
3
Summer
Term
(June 20, 1966, to Aug. 10, 1966)
Government and business
3
English composition
3
Money and banking
*023
Fall Term
(Sept. 15, 1966, to Jan. 25, 1967)
Semester
Course
Hours
Business communications
3
Physical geology
4
Historical geology
4
Interpretation of Western religion
3 1194 The expenses incurred by petitioner for the aforesaid three terms totaled $974.60, all of which was paid during 1966. In January 1967, petitioner received a temporary duty order allowing him to attend the University as a full-time day student under the United States Air Force's "Operation Bootstrap." This program enables an Air Force officer to attend a university full time for periods of up to one year. During that time the officer receives his regular *58 salary and must agree to bear all expenses (such as tuition, fees, books, and commuting) incurred in connection with such schooling. He must also agree to remain on active duty for four years subsequent to such schooling. Pursuant to the temporary duty order, petitioner attended the University from January 31, 1967 to August 18, 1967. While there he continued to receive his regularly authorized Air Force salary. Although he had no duties with the Air Force during this period, he did fly a round-trip mission to southeast Asia during the University's spring vacation. The trip was not mandatory. During the period from January 31, 1967, to August 18, 1967, he took a normal course load and went to day classes for approximately forty hours per week. His program included enrollment in the following courses: Winter Term
(Jan. 31, 1967, to June 2, 1967)
Semester
Course
Hourse
Economics of transportation
3
Public finance
3
Business fluctuations and
national income
3
Investment analysis
3
Understanding the arts
3
Summer Term
(June 19, 1967, to Aug. 18, 1967)
Risk and insurance
3
Corporation finance
3
Reading and conference
3
The expenses incurred *59 by petitioner for the aforesaid two terms totaled $916.63, all of which was paid during 1967. It was not unusual for Air Force officers to follow degree programs like petitioner's. During 1967 petitioner incurred and paid $324 as the cost of driving daily from his home to the University. Each school day he drove approximately 25 miles in each round trip between his house and the University. He left at about 7:30 a.m. and returned at about 5 p.m., having done his studying at the University because he had small children at home. At the completion of the 1967 summer term petitioner was awarded a bachelor's degree in business administration with a major in economics. Petitioner received personal satisfaction from obtaining his bachelor's degree. That satisfaction was one of his reasons for having gone to school. After he had earned his degree, petitioner returned immediately to his work with the Air Force. In October 1967 he was transferred from McChord Air Force Base to Hickam Air Force Base in Hawaii. While there he took courses which would have led to a master's degree in business administration, but he did not obtain a master's degree because of the demands of his job. Since *60 having left Hawaii in September 1970, petitioner has not enrolled in further courses. The Air Force for years has followed what is called a "whole man" policy in establishing general standards for the promotion of its officers. An officer will serve a fixed number of years at a particular rank before he is eligible for promotion to the next rank. All Air Force officers who are eligible for promotion from one rank to the next are considered by a promotion board at the same time. The "whole man" policy requires that Air Force promotion boards consider all of the factors in an officer's record before deciding whether an officer should be promoted. Among the factors considered are a prospective promotee's (1) personality, (2) emotional stability, (3) combat record, (4) flying ability, (5) leadership qualities, (6) and effectiveness as gleaned from reports by his commander or supervisor. Another very important factor is the prospective promotee's educational background. Although the Air Force has never stated a positive position that an officer must have a bachelor's degree, as a matter of guidance in establishing its education services program it has informed its educational planners *61 and managers to bear in mind that: Each officer should have educational background at least to the baccalaureate level including, when possible, specific fields of study appropriate to the officer's Air Force specialty. Opportunities for graduate study leading at least to master 1195 degree completion should be available to academically qualified personnel. Since 1961 the Air Force has not given commissions to any of its personnel (except nurses) who did not have at least a bachelor's degree. However, the people against whom petitioner was competing for promotion in 1967 had been commissioned at about the same time as petitioner. Thus, he was competing with officers who had been commissioned prior to the time that officers were required to have bachelor's degrees. While a substantial percentage of officers without bachelor's degrees have been promoted since 1961, and while petitioner knew of a four-star general who did not have a bachelor's degree, the Air Force would look with a jaundiced eye at an officer who had been commissioned for many years and who, over that period, had been unable to press on to obtain a bachelor's degree. If an officer is not promoted the first *62 time that a promotion board reviews his record, a new promotion board will review his record again in the following year. If an officer is not promoted by this second promotion board, he will most likely be released from active duty and be forced into retirement. This is known as the "up or out" policy which, in essence, means that if an officer is not promotable he is "welcome" to leave the Air Force. If an officer leaves the Air Force and has not served on active duty for at least 20 years, he will receive a certain lump sum (based on his length of service) as separation pay. If an officer leaves after having served 20 years, he will receive retirement pay equal to at least one-half of his base pay for the rest of his life. However, if an officer reaches his eighteenth year of service, he will come under what is known as an "umbrella." Under this "umbrella" an officer will be retained on active duty through his twentieth year of service, presumably so that he will be able to take advantage of the Air Force's retirement program. In the event that he had not been promoted in June 1971, petitioner could have availed himself of the protection of this "umbrella." Prior to June 1, 1971, petitioner *63 had the option of voluntarily retiring from the Air Force as of October 30, 1972. However, in order to be promoted to the rank of lieutenant colonel, he had to agree to remain on active duty in the Air Force until June 30, 1973, at which time he will be eligible for voluntary retirement. Indeed, petitioner plans to retire on or about June 30, 1973. The Air Force also intends that petitioner should retire at that time. If petitioner had a regular commission instead of a reserve commission, he could have remained with the Air Force past June 30, 1973. He had been offered a regular commission several years before trial, but evidently had turned it down. However, it is still conceivable that, in accordance with Air Force requirements for emergency circumstances, petitioner's retirement could be postponed past June 30, 1973. When he retires petitioner will receive retirement benefits equal to one-half of his base pay. This amount will be in addition to anything he may earn as a civilian. Upon retirement petitioner plans to enter business and has under specific consideration a trouble-shooting job with a rubber company in Denver. The business education he received at the University *64 while in the Air Force will be helpful to him in such a job. Opinion Petitioner seeks to deduct various educational expenses he incurred in 1966 and 1967. The deductibility of such expenses is governed by section 162(a), and more particularly, by section 1.162-5, Income Tax Regs., which was substantially revised in 1967. The Commissioner has ruled that taxpayers may rely on either the revised regulations or the pre-1967 regulations with respect to taxable years beginning before January 1, 1968. Rev. Rul. 68-191, 1968-1 C.B. 67; see sec. 7805(b). As petitioner lacked legal counsel, we shall consider both the old and new regulations in deciding the instant case. See Ronald F. Weiszmann, 52 T.C. 1106 (1969), affd. 443 F. 2d 29 (C.A. 9, 1971). The pre-1967 regulations provided in pertinent part as follows: Sec. 1.162-5. Expenses for education. (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express *65 requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. From the record it appears to us that petitioner's primary purpose in going to the 1196 University in 1966 and 1967 was for some reason other than to maintain or improve his skills as a flight operations officer or to meet the express requirements of the Air Force (or of any applicable law or regulation) as a condition to the retention of his salary, status, or employment. Petitioner in fact admitted that his educational work "was in pursuit of a degree and not necessarily in pursuit of a particular course which would have specific application to my job at that time." It may be true that with the Air Force's "up or out" policy an officer with a bachelor's degree might stand a better chance for promotion (and consequently retention by the Air Force) than an officer without a bachelor's degree. Cf. Lawrence H. Bakken, 51 T.C. 603, 610 (1969) ("shape up or ship out"), affd. 435 F. 2d 1306 (C.A. 9, 1971). However, petitioner's own testimony revealed that a substantial percentage *66 of officers continued to be promoted even though they lacked bachelor's degrees. This fact indicates that the Air Force had no express (or implied) requirement that an officer have a bachelor's degree as a condition to the retention of his salary, status, or employment. [2]
Turning to the revised regulations we find that they put aside notions of primary purpose and adopted more objective standards of deductibility. E.g., Burke W. Bradley, Jr., 54 T.C. 216, 219 (1970). They provide in pertinent part as follows: Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other *67 trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. We have already found that neither the Air Force nor any law or regulation expressly required that petitioner pursue an educational program as a condition to the retention of his salary, status, or employment. [3] We now further conclude that petitioner has failed to persuade us that his program at the University maintained or improved the skills he required as a flight operations officer. It has become established that the revised regulations do not allow a deduction for educational expenses that are only tenuously, and not proximately and directly, related to a taxpayer's job skills; the education received in respect of such expenses should *68 maintain and improve more than just "general understanding and competency" in order that such expenses be deductible. Stanley Marlin, 54 T.C. 560, 566 (1970); Burke W. Bradley, Jr. 54 T.C. 216, 220 (1970); James A. Carroll, 51 T.C. 213, 219, (1968), affd. 418 F. 2d 91 (C.A. 7, 1969); [4] see Lawrence H. Bakken, 51 T.C. 603, 610, fn. 3 (1969) (pre-1967 regulations), affd. 435 F. 2d 1306 (C.A. 9, 1971). During the years in issue petitioner's duties as a flight operations officer centered around preparing and organizing various air missions for the Air Force. In trying to establish a connection between these duties and the program he pursued at the University, petitioner testified that he was a manager of people, money, and material, and that he took *69 a program which would make him a better manager of the assets entrusted to his care. But he later admitted that many of the courses he took did not have a "proximate and parallel relationship" to his work. Furthermore, we have no indication of how such courses as historical geology, investment analysis, understanding the arts, or even economics of transportation specifically maintained or 1197 improved his skills as a flight operations officer. Consequently, we are unable to find that petitioner's education expenses in 1966 and 1967 directly maintained and improved his required skills; the deductions he asks for must be denied. Our decision with respect to the education expenses incurred at the University is also dispositive of the question of the deductibility of $324 petitioner claims as a deductible expense for travel between his home and the University. Therefore, we need not consider respondent's contention that this traveling expense was a commuting expense and, hence, nondeductible in any event. Decision will be entered for the respondent. Footnotes
1. Unless otherwise specified all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Cf. William Kinch, T.C. Memo. 1971-117↩. Furthermore, the parties are in agreement that no applicable law or regulation required petitioner to obtain such a degree.
3. For the purposes of this case, there is no substantial difference between the terms "salary, status, or employment" as used in the pre-1967 regulations and "established employment relationship, status, or rate of compensation" as used in the revised regulations.↩
4. Hugh F. Mullen, T.C. Memo. 1970-211; Raymond A. Paulson, T.C. Memo. 1970-54; Daniel J. Coughlin III, T.C. Memo. 1969-80; Est. of Cato Noonan, T.C. Memo. 1969-70; see under the pre-1967 regulations, David Roeberg, T.C. Memo. 1970-236William K. McCarter, T.C. Memo. 1969-63↩.